# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**STEWART ABRAMSON,** individually and on behalf of a class of all persons and entities similarly situated,

    Plaintiff,

v.

**LINE 5, LLC; HEADSTART WARRANTY GROUP LLC;** and **MLB GLOBAL, LLC d/b/a BENCHMARK WARRANTY**,

    Defendants.

Case No.  2:25-cv-00288-PLD

## DEFENDANT HEADSTART WARRANTY GROUP LLC'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1)

Defendant Headstart Warranty Group LLC respectfully moves this Court to dismiss Plaintiff's Class Action Complaint pursuant to Fed. R. Civ. P. 12(b)(1). Dismissal is required as the Court lacks subject matter jurisdiction under the first-to-file rule and, in support of this motion, states as follows:

**I.    INTRODUCTION**

Plaintiff Stewart Abramson ("Plaintiff") asserts that Defendants Line 5, LLC ("Line 5"), Headstart Warranty Group LLC ("Headstart") and MLB Global, LLC d/b/a Benchmark Warranty ("MLB") made unsolicited calls

using an artificial or prerecorded voice to his personal telephone number regarding a vehicle service contract, also known as an extended warranty, without Plaintiff's consent. Plaintiff asserts that the calls violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. *See generally,* ECF 1. Although Plaintiff's allegations suffer from several flaws, Headstart moves to dismiss this action because the Court lacks subject matter jurisdiction under the first-to-file rule. Plaintiff's action was filed second to an action pending in the United States District Court for the Middle District of Pennsylvania in which another plaintiff, Joseph Friel, makes the same allegations and seeks to represent the same nationwide putative class as Plaintiff. *See Friel v. Line 5, LLC; Headstart Warranty Group LLC and JEA Management Services d/b/a Covered Auto,* Case No. 3:24-cv-1866-JKM (M.D. Pa.). A true and correct copy the complaint in the *Friel* action is attached hereto as Exhibit A.

## II.   BACKGROUND

Headstart sets forth the facts as alleged in the two actions to permit the Court to assess their similarity.

### A.   Plaintiff's Complaint

Plaintiff alleges that Headstart, together with Line 5 and MLB, worked together to form an enterprise in which MLB and Line 5 would place unsolicited telemarketing calls using an artificial or prerecorded

voice to sell extended warranties to consumers. ECF 1 ¶¶ 17-20. Plaintiff asserts that MLB acts as a sales agent for Headstart; that Headstart markets and guarantees vehicle service contracts and that Line 5 handles customer management, payment processing and provides financing for the service contracts sold by MLB and guaranteed by Headstart. *Id.* ¶¶ 17-19. Both MLB and Line 5, Plaintiff alleges, place telemarketing calls, some using a prerecorded message or an artificial voice, on behalf of Headstart. *Id.* ¶ 20. Plaintiff asserts that these calls were made without the consent of himself or the putative class members and thus violated the TCPA. *Id.* ¶ 102. In addition, Plaintiff asserts that his telephone number was included in both the National Do Not Call Registry and Headstart's internal Do Not Call list. *Id.*[1] ¶¶ 23-24. He asserts claims under the TCPA on behalf of himself and three putative classes. *Id.* ¶¶ 102-03; 107-09; 112-14. Plaintiff has dismissed MLB.

B.   **Friel's Complaint**

On October 29, 2024, Joseph Friel filed a putative nationwide class action complaint against Headstart, Line 5 and JEA Management Services d/b/a Covered Auto ("JEA") asserting similar allegations of

---

[1] Plaintiff's putative third class, styled the "Internal Do Not Call Registry Class," has no members as Headstart, not being a telemarketing company, does not maintain such a registry, nor does anyone do so on its behalf.

unsolicited and unwanted telemarketing calls made using an artificial or prerecorded voice in violation of the TCPA. *See generally,* Ex. A. In Friel's Complaint, however, JEA takes the place of MLB as a sales agent for Headstart. *Id.* ¶ 14 ("JEA acts as a sales agent for Defendant Headstart's service contracts."). Further, Friel contends that JEA or Headstart made unsolicited telemarketing calls to sell extended warranties to consumers. *Id.* ¶¶ 5, 9, 17, 45. As in the present complaint, Friel alleges that Line 5 provided customer management, payment processing and financing services with respect to the extended warranties. *Id.* ¶ 16. Similar to the present complaint, Friel alleges that JEA, Headstart and Line 5 worked together to form a common enterprise to sell extended warranties through an illegal telemarketing campaign using artificial or prerecorded calls to consumers without their consent. *Id.* ¶ 17. Friel's Complaint asserts two putative nationwide classes—a "robocall" class and a "National Do Not Call Registry" class. *Id.* ¶¶ 91; 96. Unlike Plaintiff, however, Friel does not assert claims on behalf of a putative class of consumers who received marketing calls in violation of an internal do not call list (the "Internal Do Not Call Registry Class"). *See* ECF 1 ¶ 112 (Plaintiff's internal do not call registry claims). Despite this minor difference, Friel's claim are substantially similar to the alleged TCPA violations asserted in the present action. In fact, all calls placed to

Plaintiff are included in Friel's proposed robocall class. Finally, Headstart notes that Friel dismissed JEA as a party to that action.

## III. ARGUMENT

Federal courts have long recognized a compelling interest in avoiding duplicative litigation: "The first-filed rule serves to eliminate 'economic waste involved in duplicating litigation.'" *Time Warner Cable, Inc. v. USA Video Tech. Corp.*, 520 F.Supp.2d 579, 587 (D. Del. 2007) (quoting *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir. 1941)). "[C]ourts are burdened by the cases they must take on and 'should therefore not be called upon to duplicate each other's work in cases involving the same issues.'" *Id.* (quoting *Crosley*, 122 F.2d at 930). "Where two lawsuits involving the same claims are filed in different jurisdictions, the first-filed action is given preference." *Id.* at 585 (citing *Corixa Corp. v. IDEC Pharm. Corp.*, No. CIV.A.01-615-GMS, 2002 WL 265094, 2002 U.S. Dist. LEXIS 2980, at *3-4 (D. Del. Feb. 25, 2002)). "The first-filed rule reduces multiple conflicting decisions which may require separate appeals, [sic] and ensures that litigants receive a single determination of their controversy. *Id.* Importantly, the "Third Circuit applies the first-filed rule to litigation that involves the same subject matter, not necessarily the same parties." *Id.* (citing *Advanta Corp. v. Visa U.S.A.*, No. 96-7940, 1997 WL 88906, 1997 U.S. Dist. LEXIS

2007,at *X (E.D. Pa. Feb. 19, 1997)).

In the Third Circuit, "the first-filed rule is 'grounded on equitable principles' and requires district court judges to 'fashion a flexible response to the issue of concurrent jurisdiction.'" *Phoenix Ins. Co. v. Teva Pharm. Indus.*, 381 F.Supp.3d 416, 419-20 (cleaned up) (quoting *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 977 (3d Cir. 1988)). In applying this flexible approach, Third Circuit courts "have repeatedly held that 'the rule applies to case that are substantially similar.'" *Id.* at 420 (quoting *Palagano v. NVIDIA Corp.*, No. 15-1248, 2015 WL 5025469, 2015 U.S. Dist. LEXIS 112146, at *5 (E.D. Pa. Aug. 19, 2015) (collecting cases)).

In applying a flexible response, application of the first-filed rule "'is not limited to mirror image cases where the parties and the issues perfectly align. Rather, the principles underlying the rule support its application where the subject matter of the later filed case substantially overlaps with that of the earlier one.'" *Id.* (quoting *Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc.*, No. 09-2552, 2009 WL 1845236, 2009 U.S. Dist. LEXIS 54198, at *18 (E.D. Pa. June 26, 2009)). "The 'substantive touchstone of the first-to-file inquiry is subject matter.'" *Id.* (quoting *Villari Brandes & Kline*, 2009 U.S. Dist. LEXIS 54198, at *18). "'Rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping' are appropriate reasons to retain
6

6

jurisdiction of a later-filed action." *Id.* (quoting *E.E.O.C.*, 850 F.2d at 976) (cleaned up). As each of the complaints allege that Headstart, Line 5 and one other party (MLB in the present action; JEA in *Friel*) formed a common joint enterprise to sell extended warranties through unsolicited telephone calls using an artificial or prerecorded voice, the proof needed for each lawsuit will be nearly identical.

A review of the allegations of the two complaints side-by-side demonstrates that the first-filed rule should be applied as to the present action:

| **Friel Complaint Allegations** | **Abramson Complaint Allegations** |
|---|---|
| "Plaintiff Joseph Friel ("Plaintiff") brings this action under the TCPA alleging that JEA Management Services d/b/a Covered Auto sent pre-recorded telemarketing calls on behalf of Headstart Warranty Group LLC and Line 5, LLC promoting their goods and services, including to calls [sic] that were on the National Do Not Call Registry, such as the Plaintiff. Those calls were made without the call recipient's [sic] prior express written consent." Ex. A ¶ 5. | "Plaintiff Stewart Abramson ("Plaintiff") brings this action under the TCPA alleging that MLB Global, LLC d/b/a Benchmark Warranty sent telemarketing calls that delivered pre-recorded messages or messages using an artificial voice on behalf of Headstart Warranty Group LLC and Line 5, LLC promoting their goods and services, including calls to numbers that were on the National Do Not Call Registry, such as the Plaintiff. Those calls were made without the call recipient's [sic] prior express written consent. ECF 1 ¶ 5. |
| "Because the calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a | "Because the calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a |

| | |
|---|---|
| proposed nationwide class of other persons who were sent the same illegal telemarketing calls." Ex. A ¶ 6. | proposed nationwide class of other persons who were sent the same illegal telemarketing calls." ECF 1 ¶ 6. |
| "Defendant JEA Management Services d/b/a Covered Auto is a seller of vehicle service contracts … who sent pre-recorded telemarketing calls on behalf of Headstart Warranty Group LLC and Line 5, LLC." Ex. A ¶ 9. | "Defendant MLB Management Services LLC d/b/a Benchmark Warranty is a seller of vehicle service contracts … who sent telemarketing calls on behalf of Headstart Warranty Group LLC, the service contract company, and Line 5, LLC, the financing company for those contracts." ECF 1 ¶ 9. |
| "Upon information and belief, as best Plaintiff can discern, JEA acts as a sales agent for Defendant Headstart's service contracts." Ex. A ¶ 14. | "Upon information and belief, as best Plaintiff can discern, MLB acts as a sales agent for Defendant Headstart's service contracts." ECF 1 ¶ 17. |

| | |
|---|---|
| "Defendant Headstart Warranty Group LLC is a seller and guarantor of vehicle service contracts. Upon information and belief, Headstart is the guarantor of the vehicle service contracts and is the entity that will purportedly pay a covered repair under the contract." Ex. A ¶ 15. | "Defendant Headstart Warranty Group LLC is a seller and guarantor of vehicle service contracts. Upon information and belief, as best Plaintiff can discern, Headstart is the guarantor of the vehicle service contracts and is the entity that will purportedly pay a covered repair under the contract." ECF 1 ¶ 18 |
| "Defendant Line 5 handles the customer management, payment processing and also provides financing for the service contracts sold by JEA and guaranteed by Headstart." Ex. A ¶ 16. | "Defendant Line 5 handles the customer management, payment processing, and also provides financing for, the service contracts sold by MLB and guaranteed by Headstart." ECF 1 ¶ 19. |
| "To generate business for this joint | "To generate business for this joint |

| | |
|---|---|
| enterprise, JEA place [sic] illegal telemarketing calls … on Headstart's and Line 5's behalf." Ex. A ¶ 17. | enterprise, MLB and Line 5 place illegal telemarketing calls, some using a pre-recorded message, or an artificial voice, on Headstart's behalf." ECF 1 ¶ 20. |
| "Plaintiff's telephone number … is a non-commercial telephone number not associated with any business." Ex. A ¶ 18. | "Plaintiff's telephone number … is a non-commercial telephone number not associated with any business. ECF 1 ¶ 21 . |
| "Plaintiff's telephone number is used for personal residential purposes. Ex. A ¶ 19. | "Plaintiff's telephone number is used for personal residential purposes. ECF 1 ¶ 23. |
| "Plaintiff has never been a customer of any of the Defendants nor asked or inquired to be a customer of any of the Defendants." Ex. A ¶ 21. | "Plaintiff has never asked or requested to be a customer of any of the Defendants." ECF 1 ¶ 25. |
| "The calls all began with a prerecorded message with the same fake typing and office background notice." Ex. A ¶ 21. | "The calls all began with a message that was prerecorded or that used an artificial voice." ECF 1 ¶ 28. |
| "Thereafter, the Plaintiff received various emails and text messages from Line5." Ex. A ¶ 36. | "Thereafter, the Plaintiff received various emails and text messages from Line5." ECF 1 ¶ 35. |
| "The proposed Vehicle Service Agreement linked in the email listed the 'Seller' as 'Covered Auto,' the 'Lienholder' as 'Line 5, LLC' and Defendant Headstart as the 'Obligor.'" Ex. A ¶ 39. | "[T]he purported agreement Plaintiff was asked to sign, which listed Line 5 as a 'Lienholder' and MLB as the specific seller of the contract which Headstart underwrote and obliged itself to." ECF 1 ¶ 57. |
| "The aforementioned calls were placed using and beginning with a prerecorded voices [sic] because: (a) the robot's questions and speech were sometimes cut off and | "Plaintiff initially interacted with an artificial intelligence and artificial voice system, but was eventually transferred to a live agent … who was obviously |

9

| | |
|---|---|
| clunky, (b) the robot had an identical, generic, monotone voice, (c) it would be illogical for a human to call someone and play various scripted questions and statements without the ability to engage in dialogue, (d) the robot repeated the same identical phrases during the call multiple times exactly the same way, just like playing back a recording, and (e), the Plaintiff was eventually transferred to a human being who was obviously human." Ex. A ¶ 40. | human." ECF 1 ¶ 31. |
| "Headstart and Line 5 is [sic] liable for Defendant JEA's conduct and telemarketing calls placed by JEA and ultimately bade [sic] for Headstart and Line 5 to generate customers for Headstart and Line 5, including the Plaintiff." Ex. A ¶ 45. | "Headstart is liable for Defendant MLB's and Line 5's conduct and telemarketing calls placed by Line 5 and/or MLB and ultimately bade [sic] for Headstart to generate customers for Headstart and its agents, including the Plaintiff." ECF 1 ¶ 55. |
| "Indeed, Headstart and Line 5 relationships with Defendant JEA contain numerous hallmarks of agency." Ex. A ¶ 46. | "Indeed, Headstart's relationships with Defendants MLB and Line 5 contain numerous hallmarks of agency." ECF 1 ¶ 56. |
| "As such, JEA entered into contracts purporting to bind Headstart and Line 5, and therefore purported to be able to incur obligations and enter into contractual relations involving Headstart." Ex. A ¶ 48. | "As such, MLB and Line 5 entered into contracts purporting to bind Headstart, and therefore purported to be able to incur obligations and enter into contractual relations involving Headstart." ECF 1 ¶ 58. |
| "Headstart and Line 5 thus had full knowledge of JEA's illegal conduct and did not terminate or discipline them, thus implicitly ratifying their actions and endorsing their illegal behavior." | "Headstart thus had full knowledge of MLB and Line 5's illegal conduct and did not terminate or discipline them, thus implicitly ratifying their actions and endorsing their illegal |

10

| | |
|---|---|
| Ex. A ¶ 49. | behavior." ECF 1 ¶ 59. |
| "Headstart and Line 5 was [sic] interested in hiring agents to sell its products and services and financing companies to finance its contract, who in turn handle all aspects of the sales process, vet potential clients, and incur obligations on its behalf to interested customers they managed to sell." Ex. A ¶ 52. | "Headstart was interested in hiring agents to sell its products and services and financing companies to finance its contracts, who would in turn handle all aspects of the sales process, vet potential clients, and incur obligations on its behalf to interested customers they managed to sell." ECF 1 ¶ 62. |
| "Headstart and Line 5 authorized and hired JEA to orchestrate an *en masse* telemarketing campaign to sell its contract for which it would be obliged." Ex. A ¶ 53. | "Headstart authorized and hired MLB and Line 5 to orchestrate an *en masse* telemarketing campaign to sell its contracts for which it would be obliged." ECF 1 ¶ 63. |
| "The calls were nonconsensual encounters." Ex. A ¶ 67. | "The calls were nonconsensual encounters." ECF 1 ¶ 77. |
| "Plaintiff never provided his consent or requested the calls." Ex. A ¶ 69. | "Plaintiff never provided his consent or requested the calls." ECF 1 ¶ 80. |
| "Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded." Ex. A ¶ 70. | "Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded." ECF 1 ¶ 81. |
| "[T]hese calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class." Ex. A ¶71. | "[T]hese calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class." ECF 1 ¶ 82. |

11

The fact that the present action names Headstart along with MLB and Line 5 instead of JEA does not preclude the application of the first-filed rule. *Jones v. Wetzel*, Civil Action No. 2:23-CV-01780-CBB, 2025 U.S. Dist. LEXIS 53457, at *9-10 (W.D. Pa. Mar. 24, 2025) (citing *Glunk v. Noone*, 689 F. App'x 137, 139 (3d Cir. 2017) (affirming application of first-filed rule where a party and claims differed between two otherwise substantially similar cases); *Osborne v. Emp. Benefits Admin. Bd. of Kraft Heinz*, No. 2:19-CV-00307, 2020 U.S. Dist. LEXIS 62443, 2020 WL 1808270, at *13 (W.D. Pa. Apr. 9, 2020) (applying first-filed rule where subject-matter overlapped, but parties and claims differed); *Catanese v. Unilever*, 774 F. Supp. 2d 684, 689 (D.N.J. 2011) ("[O]verlapping subject matter is the key" to the first-filed rule).

Notably, even though there is a different co-defendant in this action, Plaintiff's claims arise from the same facts and under the same causes of action in both cases. *See* chart, *supra*. Since there is a substantial overlap between the cases, application of the first-filed rule would facilitate the "orderly administration of justice." *Id.* at *10. In addition, none of the exceptions to the first-filed rule appear to apply. There are no "'rare or extraordinary circumstances,'" nor is there inequitable conduct, bad faith, or forum-shopping. *Id.* (citing *Zero Techs., LLC v. Clorox Co.*, 713 F. Supp. 3d 40, 63 (E.D. Pa. 2024)).

12

"'Once it is determined that the first-filed rule applies, and no exceptions counsel against its application, the court must determine an appropriate remedy.'" *Law School Admission Council, Inc. v. Tatro*, 153 F. Supp. 3d 714, 727 (E.D. Pa. 2015) (quoting *Koresko v. Nationwide Life Insurance Co.*, 403 F. Supp. 2d 394, 403 (E.D. Pa. 2005). A court may dismiss the case without prejudice or stay the action for the duration of the first filed action. *Id.* (citing *Koresko*, 403 F. Supp.2d at 403). "Alternatively, the case may be transferred to the district where the first-filed action is pending, consistent with the requirements of 28 U.S.C. § 1404(a) and *Jumara* [*v. State Farm Insurance Co.*, 55 F.3d 873(3d Cir. 1995)]. *Id.* "'[C]ourts in our district have held that where there is a strong likelihood of consolidation with a related action, a transfer of venue is warranted.'" *Id.* at 728 (quoting *Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc.*, No. 09-2552, 2009 U.S. Dist. LEXIS 54198, 2009 WL 1845236, at *5 (E.D. Pa. June 26, 2009)).

## IV.   CONCLUSION

Pursuant to the argument herein, Headstart respectfully requests that the Court apply the first-filed rule and transfer this action to the Middle District of Pennsylvania or such other option as the Court deems proper.

Dated: July 3, 2025

        Respectfully submitted,

        **MESSER STRICKLER BURNETTE, LTD.**

        */s/ Andrew M. Schwartz*
        Andrew M. Schwartz
        935 E. Lancaster Ave., #1003
        Downingtown, PA 19335
        ☎: (320) 434-9664
        🖷: (312) 334-3474
        aschwartz@messerstrickler.com
        *Attorneys for Defendant*
        *Headstart Warranty Group LLC*