IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEWART ABRAMSON, individually and on behalf of a class of all persons and entities similarly situated, <br><br> Plaintiff <br><br> vs. <br><br> LINE 5, LLC and HEADSTART WARRANTY GROUP LLC <br><br> Defendants. | Case No. 2:25-cv-00288-PLD |

**OPPOSITION TO MOTION TO DISMISS, TRANSFER, OR STAY PURSUANT TO FIRST-TO-FILE RULE**

Plaintiff Stewart Abramson respectfully submits this response in opposition to Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1). For the reasons set forth below, Plaintiff respectfully requests that the Court deny the motion in its entirety. Divergent factual predicates, including the Defendants' noncompliance to multiple written STOP requests, and a direct liability theory as against Line 5 for its calling conduct, will require different and more extensive discovery here, including Line 5's prerecorded dialer logs, Defendants' opt-out handling protocols, and distinct legal analyses of direct liability and treble damages. Accordingly, despite superficial overlap in parties and some classes, the two cases arise from different telemarketing conduct and facts and should proceed on separate tracks rather than be swept together under the first-to-file rule.

**FACTS**

Although the Plaintiff alleges TCPA claims against Line 5 LLC and HeadStart, just as in *Friel*, the claims present here demonstrate manifest factual differences that make consolidation

improper. In this case, unlike in *Friel*, Defendants' campaign did not end with a single tranche of robocalls. After Mr. Abramson replied "STOP" to a Line 5 text message, Line 5 confirmed the opt-out, yet nevertheless kept calling him, including with prerecorded robocalls, including a robocall on October 25, 2024 that repeated the very message he had just tried to halt. As a result, in addition to the Robocall and Do Not Call Registry classes alleged in *Friel*, this case asserts yet another putative class not present in *Friel*, that for violations of the TCPA's internal Do Not Call Registry requirements. As Plaintiff will explain, that fact *alone* distinguishes *Friel* and counsels against consolidation under the first-to-file rule. Indeed, this pattern of refusing to honor internal do-not-call requests continued despite further revocations, with Abramson sending a *written* cease-and-desist letter on October 24, receiving another confirmation on October 26, and still enduring more automated texts and voice calls, prompting him to text STOP a second and third time on October 26 and October 30, all without relief. Those post-revocation contacts and associated internal Do Not Call claims are wholly absent from *Friel*, which describes a discrete series of fourteen prerecorded calls placed by JEA between August 8 and September 27, 2024, with no allegation of texting, opt-out requests, or continued harassment after multiple confirmed do not call revocation attempts.

  Because of Line 5's refusal to honor multiple STOP requests, Abramson pleads an Internal Do-Not-Call Class and seeks *direct liability* for his Robocall Class against Line 5 itself in this case. This stands in further contrast to *Friel*, where the Plaintiff is only proceeding on a *vicarious liability* theory as to Line 5 for the Robocall Class, because in that case, unlike this one, it is *not* alleged that Line 5 placed any prerecorded robocalls; all that is alleged is that Line 5 placed non-automated marketing messages. *Friel*, by contrast, asserts only a vicarious liability Robocall Class against Line 5 and targets prerecorded calls made by JEA, not Line 5, leaving

Line 5's own prerecorded call outbound activity, and any texting campaign, outside the pleadings.

## LEGAL STANDARD

The standards for 12(b)(1) challenges for a lack of subject matter jurisdiction are well-settled in this circuit. Notably, there exist two types of 12(b)(1) challenges, each with their corresponding standards: facial and factual challenges. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Here, Defendant has not submitted any additional evidence, other than the complaints themselves, in order to support its contention that the cases should be dismissed and consolidated under the First-to-File Rule. In so doing, Defendant mounts a facial challenge. In such a challenge, this Court is bound to consider all the factual allegations in the Complaint as true. *Id.* "In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim: Court[s] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024). Moreover, to the extent that the motion does not properly address jurisdiction but instead sounds in the factual merits of the Plaintiff's claims, such motion also ought to be denied and the case proceed. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

## ARGUMENT

### I.  The Motion is Procedurally Improper

It is unclear why the Defendant moves to dismiss this case under Rule 12(b)(1) for a purported lack of subject matter jurisdiction as an initial matter. Just because cases allegedly overlap does not mean that the three requisite elements of subject matter jurisdiction, injury,

traceability, and redressability, have not been satisfied. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Here, Defendants filed their Answer to the Complaint, in addition to asserting this confusing motion to transfer somehow couched as a motion to dismiss. By doing so, they have waived its right to seek dismissal under Rule 12(b)(1). A Rule 12(b)(1) defense "must be made before pleading if a responsive pleading is allowed." FED. R. CIV. P. 12(b). As it is procedurally improper, Defendant's relief for dismissal is due to be denied.

**II.      The First-to-File Rule Is Discretionary and has Been Applied Narrowly in This District**

The first-to-file rule is a discretionary doctrine that permits a district court to stay, transfer, or dismiss a case "where the parties have instituted competing or parallel litigation in separate federal courts." *Zokaites v. Land-Cellular Corp.*, 424 F. Supp. 2d 824, 838 (W.D. Pa. 2006). The primary concern underlying the rule is not rote adherence to filing chronology, but the promotion of comity among federal courts and the encouragement of sound judicial administration. *Novo Nordisk Inc. v. Temple*, No. CV 16-1509, 2016 WL 11970480, at *1 (W.D. Pa. Nov. 2, 2016); *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990). As the Third Circuit has explained, the rule gives a court the "power" to enjoin a later-filed action involving the same parties and issues, but that power is not automatically exercised. *Id*. "That authority, however, is not a mandate directing wooden application of the rule." *Id*.

In this District, courts have repeatedly emphasized that application of the rule is not mandatory but is rather discretionary. Indeed, district courts "have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule." *E.E.O.C.*, 850 F.2d at 972. The Western District of Pennsylvania has recognized that district courts in the Third Circuit are divided in their approach to the rule's scope. See *Novo Nordisk*,

2016 WL 11970480, at *2. In light of that division, this District has previously applied the rule narrowly, requiring a high degree of similarity between the competing actions. As this Court explained in *Sam Mannino Enters., LLC v. John W. Stone Oil Distrib., LLC*, "[t]he rule generally applies when [the first-filed case is] truly duplicative of the [later-filed] suit.... That is, the one must be materially on all fours with the other. The issues must have such an identity that a determination in one action leaves little or nothing to be determined in the other." 26 F. Supp. 3d 482, 486 (W.D. Pa. 2014) (quoting *Grider v. Keystone Health Plan Cent.*, Inc., 500 F.3d 322, 334 (3d Cir. 2007)).

### III. The *Abramson* and *Friel* Actions Are Not Duplicative Under the First-to-File Rule Because They Do Not Address the Same Subject Matter

Even under the discretionary approach recently applied in this District, the first-to-file rule does not apply here. In *Jones v. Wetzel*, the court held that the rule applied because the facts are "mirror images" and "the claims and Defendants are nearly identical across the two cases." 2025 U.S. Dist. LEXIS 53457, at *8–9 (W.D. Pa. Mar. 24, 2025). The primary justification for this rule, the court explained, is to avoid *truly* duplicative litigation. *Id*. "[O]verlapping subject matter is the key" to the first-filed rule. *Catanese v. Unilever*, 774 F. Supp. 2d 684, 689 (D.N.J. 2011). Similarly, courts in the Eastern District have held that the rule may apply where there is a "substantial overlap" in subject matter. *Law School Admission Council, Inc. v. Tatro*, 153 F. Supp. 3d 714, 723–24 (E.D. Pa. 2015). But that concern is absent here. *Abramson* and *Friel* assert distinct legal theories, involve different classes, and target different conduct. Although there is some overlap, as explained above, material differences in the two claims, including the pleading of an entirely additional cause of action and associated class, confirm that the actions are not "mirror images" or even substantially overlapping, and that the first-to-file rule is

inapplicable. Given that the rule is discretionary, the Court should not apply it here, and retain its inherent jurisdiction to disregard the first-to-file rule in the interests of equity.

Although both complaints invoke the TCPA against Line 5 LLC and HeadStart, they target fundamentally different conduct. Although the TCPA is often referred to as a singular, monolithic law, a careful review of the Act itself and the two separate and distinct pillars of the TCPA, Subsections (b) and (c), show why a blunt view can lead to erroneous conclusions. *Friel* concerns a single six-week robocall blitz devoid of any allegations that Line 5 sent *prerecorded* messages *itself* to the Plaintiff, or that the Defendants ignored any opt-out. By contrast, this case alleges additional conduct pertinent to Defendants, including that the Plaintiff attempted to opt-out no fewer than three times. And contrary to HeadStart's assertion, the TCPA requires HeadStart to *also* maintain an internal do not call list, even if it directed third parties to place calls on its behalf. The TCPA requires a seller-specific internal do not call list and 47 C.F.R. § 64.1200(d)(3) can be violated either by (1) refusing to place a plaintiff's number on an internal do-not-call list, including by not having one, or (2) calling a number, despite it being on an internal do-not-call list. *See Robison v. 7PN, LLC*, 569 F. Supp. 3d 1175, 1184 (D. Utah 2021). And, as outlined above, in this case, Line 5 is alleged to have placed prerecorded calls directly to the Plaintiff, leading to *direct liability* robocall claims against *both* remaining Defendants, unlike in *Friel*, which alleges only *vicarious liability* robocall claims as against Line 5.

What truly sets this case apart are Defendants' defiance of internal do-not-call requests. On August 13, 2024, weeks before any of the October calls, Mr. Abramson wrote to HeadStart demanding to be placed on its internal DNC list; both HeadStart and Line 5 ignored that written request, including by placing the first call in October. Then, after Line 5 texted a payment-setup link, Abramson replied "STOP," received a confirmation, yet was still hit with another identical

prerecorded call on October 25, 2024. Even multiple follow-up STOP replies on October 26 and October 30, and fresh confirmations each time, together with yet *additional* written correspondence, failed to stem the flood of texts and robocalls. Those post-revocation contacts supply the backbone for an Internal Do-Not-Call Registry class as against both Defendants, together with a direct prerecorded call claim against Line 5 itself, causes of action that simply do not exist in *Friel*.

Because this case alleges additional claims, it will require different, additional evidence that the Plaintiff here will not be able to obtain in *Friel*: Line 5's prerecorded dialer logs, its scripts, Line 5's own outbound activity, and both Defendants' internal do not call protocols, including HeadStart's apparent refusal to maintain a seller-specific internal Do-Not-Call list on the specious basis that it does not place calls itself, and which it is nevertheless required to maintain, even if it hires third parties to make such calls on its behalf. Simply put, the two actions therefore "address different subject matter" within the meaning of the First-to-File doctrine: discovery will not overlap, factual findings in one case cannot dispose of claims in the other, and separate adjudication is necessary to vindicate the distinct privacy intrusions alleged here. Minimally, those considerations counsel that this motion should be denied without prejudice to allow the factual circumstances regarding the calls in both cases to be developed so the parties can brief this issue with more certainty.

### IV. The Proposed Internal Do Not Call Class in *Abramson* Is Not Present in *Friel*

Most notably, *Abramson* includes a separately pleaded Internal Do Not Call Class, defined as: all persons within the United States to whom (1) Defendants (or a third party acting on their behalf) placed (2) two or more telemarketing calls in a 12-month period, (3) after they

had previously asked for the calls to stop, and (4) within four years of the filing of the complaint. *Friel* contains no such class. Because the claims in *Friel* and *Abramson* do not substantially overlap or seek to resolve the same legal or factual issues, *Friel* could never be expanded to encompass the claims asserted in *Abramson*, as it does not include an Internal Do Not Call claim. As a result, even if class certification were granted in *Friel*, it would necessarily exclude a substantial portion of the individuals covered by the proposed additional class in *Abramson*, those who received messages after specifically requesting that the massages stop. As a result, principles of equity further counsel against application of the rule.

    This Court has recognized that the first-to-file rule may apply "where both the putative class members are the same and the case is based on the same underlying facts." *Miller's Furniture of Mercer Co. v. Banner Life Ins. Co.*, Civil Action No. 2:17-cv-00557, 2017 U.S. Dist. LEXIS 98481, at *8 (W.D. Pa. June 23, 2017). Courts in this Circuit have likewise emphasized that "the classes . . . are compared" when determining whether actions are duplicative. *Catanese v. Unilever*, 774 F. Supp. 2d 684, 688 (D.N.J. 2011) (quoting *Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008)). Unlike in *Miller's Furniture* and *Catanese*, where the proposed classes were identical, the Internal Do Not Call Class in *Abramson* is not coextensive with the classes proposed in *Friel*. The *Friel* action asserts no internal list claim and no subclass resembling the one proposed in *Abramson*. This lack of overlap in class scope confirms that the two actions are not duplicative for purposes of the first-to-file analysis.

V.     *Abramson* Alleges Direct Liability, Unlike the Vicarious Liability Claim in *Friel*

Separately, the theory of liability asserted in *Abramson* is also distinct. In *Abramson*, Plaintiff pleads direct liability against Line 5 for prerecorded calls it allegedly placed itself, including the calls forming the basis of the Internal Do Not Call claims. By contrast, *Friel* does not allege that Line 5 personally initiated any prerecorded calls. Instead, it asserts that Line 5 is vicariously liable for prerecorded calls placed by a different party. This distinction matters. Whether Line 5 is directly liable for its own calling conduct, as opposed to being vicariously liable for another's, raises entirely different legal and evidentiary questions—concerning not just proof of liability, but the scope of discovery, the identity of relevant witnesses, and the applicable defenses. Indeed, again, principles of equity further counsel against application of the first to file rule as Line 5 has moved to dismiss the *Friel* action, among other grounds, on the basis that it is not directly liable and cannot be vicariously liable for the prerecorded conduct, which it is alleged to have directly conducted here.

Federal courts have recognized that such differences in TCPA liability theories and factual posture preclude consolidation. The United States Judicial Panel on Multidistrict Litigation, for example, has routinely declined to consolidate TCPA cases where the methods of contact or legal theories vary. In one instance, the JPML found the issues too dissimilar where "two actions allege [Defendant] sent text messages, while two actions alleged [Defendant] made telephone calls using an autodialer . . . [and] one action alleges violations of the 'Do-Not-Call' registry." *In re Holiday Cruise Line TCPA Litig.,* 118 F. Supp. 3d 1377 (J.P.M.L. 2015). See also *In re Lifewatch*, Inc., *TCPA Litig.*, 140 F. Supp. 3d 1342 (J.P.M.L. 2015); *In re Caribbean Cruise Line, Inc., TCPA Litig.*, 89 F. Supp. 3d 1356 (J.P.M.L. 2015). As those cases confirm, the

mere fact that actions arise under the TCPA does not make them duplicative, particularly where the underlying claims and liability theories diverge. That is precisely the case here.

## Conclusion

In short, the distinct class definitions and Abramson's direct liability claims against Line 5 make clear that the two actions are not duplicative. Because *Friel* does not encompass the Internal Do Not Call theory or allege direct prerecorded calling conduct by Line 5, consolidating these actions would not promote judicial efficiency or avoid overlapping litigation, the core purposes of the first-to-file rule. The Motion should be denied.

Dated: July 31, 2025

*/s/ Anthony Paronich*
Anthony Paronich, *pro hac vice*
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100