IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEWART ABRAMSON, individually and on behalf of a class of all persons and entities similarly situated, <br><br> Plaintiff, <br><br> vs <br><br> LINE 5, LLC, et al., <br><br> Defendants. | Civil Action No. 2:25-288 <br><br> Judge Robert J. Colville <br> Magistrate Judge Patricia L. Dodge |

### REPORT AND RECOMMENDATION

**I.  Recommendation**

It is respectfully recommended that the motion to dismiss filed by Defendant Headstart Warranty Group, LLC (ECF No. 24), as joined by Defendant Line 5, LLC (ECF No. 27) be granted and that this action be transferred to the United States District Court for the Middle District of Pennsylvania.

**II.  Report**

Plaintiff Stewart Abramson brings this putative class action alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), against Defendants Line 5, LLC ("Line 5") and Headstart Warranty Group, LLC ("Headstart").[1]

Pending before the Court is a motion to dismiss filed by Headstart and joined by Line 5. In the motion, Defendants argue that a substantially similar class action was previously filed and is pending in the United States District Court for the Middle District of Pennsylvania. Therefore,

---

[1] The Complaint also named MLB Global, LLC d/b/a Benchmark Warranty ("MLB Global") as a Defendant. However, on May 16, 2025, Plaintiff filed a notice of voluntary dismissal as to this entity (ECF No. 16).

they assert this action should be either dismissed or transferred to that court under the first-filed rule.[2]

For the reasons that follow, the motion should be granted and the case should be transferred to the District Court for the Middle District of Pennsylvania.

### A. Procedural History

Plaintiff commenced this action on February 26, 2025, alleging three claims under the TCPA. Count I alleges a claim under Section 227(b)(3)(B) based on Plaintiff's receipt of prerecorded messages on his cell phone without prior written consent. In Count II, Plaintiff alleges a claim under Section 227(c)(5) based on his receipt of telemarketing calls despite being on the Do Not Call Registry. The Complaint asserts another claim under Section 227(c)(5) in Count III that is based on Plaintiff being sent telemarketing calls after requesting that such calls stop.

Line 5 and Headstart filed answers to the Complaint and Plaintiff dismissed MLB Global from the case on May 16, 2025. An Initial Case Management Conference was held on June 20, 2025 and a Case Management Order established various dates for discovery and related matters (ECF No. 23).

On July 3, 2025, Headstart filed the pending motion (ECF No. 24) and Line 5 joined the motion shortly thereafter (ECF No. 27). On July 31, 2025, Plaintiff filed a response in opposition (ECF No. 31) and the motion is ripe for disposition.

---

[2] The motion is captioned "motion to dismiss" and the proposed order requests dismissal (ECF No. 25-2). However, the brief concludes with a request that the Court "apply the first-filed rule and transfer this action to the Middle District of Pennsylvania or such other option as the Court deems proper." (ECF No. 25 at 13.) For the reasons explained below, transfer is the most appropriate action.

### B. Factual Allegations

Plaintiff alleges that MLB Global sells vehicle service contracts, colloquially known as extended warranties, and acts as a sales agent for Headstart's service contracts, which is described as being akin to an insurance agent selling an insurer's coverage. (Compl. ¶ 17.) Headstart is the seller and guarantor of vehicle service contracts and Line 5 handles the customer management, payment processing and financing for the service contracts sold by MLB Global and guaranteed by Headstart. (*Id.* ¶¶ 18-19.)

Plaintiff states that his telephone number is non-commercial in nature, is not associated with any business, and is used for personal residential purposes. He placed it on the National Do Not Call Registry in June 2015, where it has been ever since. In addition, on August 13, 2024, he wrote to Headstart and specifically requested that they add his telephone number to their own internal Do Not Call List. (*Id.* ¶¶ 21-24.)

Plaintiff has never requested to be a customer of any of the Defendants. Despite this fact, he received at least eighteen telemarketing calls from MLB Global and/or Line 5 in October 2024. The calls began with a message that was prerecorded or used an artificial voice stating that the caller was "calling on behalf of the Vehicle Services Department." Plaintiff claims that they did so to obfuscate their identities as the source of the illegal calls. To determine the identity of the caller, Plaintiff played along, interacting with the artificial voice. Eventually a live agent, Thomas Martinez, asked him about his car's condition and mileage and proceeded to offer him pricing for a protection plan. Martinez stated that he worked for "Benchmark Warranty," a registered fictitious name in Missouri owned by MLB Global. Martinez also said that Headstart would administer the policy and that it would be financed by Line 5. (*Id.* ¶¶ 25-34.)

Thereafter, Plaintiff received various emails and text messages from Line 5, as well as a notice from Equifax that Line 5 made a soft inquiry about him on his credit report without his consent. Martinez called him several times, attempting to get him to agree to a $90.49/month service contract for 50 months. Plaintiff responded "STOP" by text and also called Line 5 to request that the calls stop, but they continued. He also sent a letter to MLB Global, Headstart and Line 5, inquiring why he was receiving illegal calls and requesting that they stop and place his number on their internal Do Not Call Lists. The calls and texts continued, however. (*Id.* ¶¶ 35-44.)

According to the Complaint, Plaintiff obtained a copy of the purported "Security Agreement" that was sold on these calls. It listed the "Seller" as "Thomas Martinez" and that the contract was assigned to Line 5. The "Seller" of the protection plan is Headstart, listed as "HeadStart Direct." (*Id.* ¶ 48.)

Plaintiff notes that as stated by the FCC, a company that directs another company to make solicitation calls on its behalf bears ultimate responsibility for any violations. Further, the FCC has instructed that sellers like Headstart may not avoid liability by hiding behind third-party agents such as MLB Global or outsourcing telemarketing and sales operations to third parties such as Line 5 and MLB Global. Therefore, he asserts that Headstart is liable for MLB Global's and Line 5's conduct and telemarketing calls for the purpose of generating customers for Headstart and its agents. (*Id.* ¶¶ 51-55.)

Plaintiff asserts that MLB Global and Line 5 entered into contracts purporting to bind Headstart. Despite having full knowledge of their illegal conduct, Headstart did not terminate them or discipline them, thus implicitly ratifying their actions and endorsing their illegal behavior. (*Id.* ¶¶ 58-59.)

According to Plaintiff, the calls he received were unwanted and nonconsensual and he revoked any purported consent both prior to and after they were made. They did not stop, however. As a result, his privacy was violated and that he was harmed because the calls tied up his phone line, he was charged for them and they were frustrating, obnoxious, annoying and a nuisance. (*Id.* ¶¶ 76-82.)

Plaintiff asserts that he brings this action on behalf of himself and the following three proposed classes of individuals:

> **Robocall Class**: All persons in the United States who, (1) within four years prior to the commencement of this litigation until the class is certified (2) received one or more calls on their cellular telephone or any other protected telephone service (3) from or on behalf of MLB Management Services d/b/a Benchmark Warranty, Headstart Warranty Group LLC, or Line 5, LLC, (4) sent using the same, or substantially similar, pre-recorded messages used to contact the Plaintiff.
>
> **National Do Not Call Registry Class**: All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendants or a third party acting on Defendants' behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.
>
> **Internal Do Not Call Class**: All persons within the United States to whom: (1) Defendants (or a third-party acting on behalf of Defendants) sent (2) two or more telemarketing calls in a 12-month period, (3) who had previously asked for the calls to stop, and (4) within the four years prior to the filing of the Complaint.

(*Id.* ¶¶ 84-85.)[3]

---

[3] Defendants contend that the proposed third class has no members because Headstart, which is not a telemarketing company, does not maintain a Do Not Call Registry and no other entity does so on its behalf. (ECF No. 25 at 3 n.1) Plaintiff counters that the TCPA requires Headstart to maintain an internal do not call list, even if it directed third parties to place calls on its behalf.

### C. The Friel Complaint

On October 29, 2024, four months before this case was filed, Joseph Friel[4] filed a putative nationwide class action against Headstart, Line 5 and JEA Management Services d/b/a Covered Auto ("JEA"). Friel's Complaint also alleges that the defendants engaged in unsolicited and unwanted telemarketing calls using artificial or prerecorded messages to sell extended warranties to consumers in violation of the TCPA. (Friel Compl. ¶¶ 5, 9, 14, 17, 45) (ECF No. 25 Ex. A.) *Friel v. Line 5, LLC*, No. 3:24-cv-1866 (M.D. Pa. filed Oct. 29, 2024).

Friel alleges that Line 5 provided customer management, payment processing and financing services with respect to the extended warranties. (*Id.* ¶ 16.) Friel alleges that JEA, Headstart and Line 5 worked together to form a common enterprise to sell extended warranties through an illegal telemarketing campaign using artificial or prerecorded calls to consumer without their consent. (*Id.* ¶ 17.)

Friel proposes two nationwide classes: a "robocall" class and a "National Do Not Call Registry" class. (*Id.* ¶¶ 91, 96.) He does not assert claims on behalf of a putative class of consumers who received marketing calls in violation of an internal do not call list. Headstart argues, however, that Friel's claims are substantially similar to Plaintiff's claims here, that all calls placed to Plaintiff are included in Friel's proposed robocall class and that Friel has dismissed JEA as a party just as Plaintiff has dismissed MLB Global in this case.[5]

---

[4] The same counsel brought both cases and the same counsel represents Defendants in both cases.
[5] This occurred on March 21, 2025. *Friel*, ECF No. 50.

### D. Standard of Review

Defendants contend that their motion is based on lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). As Plaintiff notes, however, Defendants do not actually contend that this Court lacks subject matter jurisdiction over the case, nor would such an argument make sense. Plaintiff has invoked federal question jurisdiction, 28 U.S.C. § 1331, and brings claims for violations of a federal statute, the TCPA. Thus, the Court has subject matter jurisdiction over this case.[6]

Therefore, the motion will be treated as a motion to dismiss or transfer based on the first-filed rule.

### E. Analysis

1. First-Filed Rule

As explained by the Court of Appeals, the first-filed rule:

> is a comity-based doctrine stating that, when duplicative lawsuits are filed successively in two different federal courts, the court where the action was filed first has priority. In some cases, "first-filed" courts have relied on the rule to enjoin litigation in other jurisdictions. In other cases, "second-filed" courts have cited the rule to defer consideration of a matter until proceedings have concluded elsewhere. Application of the rule is discretionary. If a second-filed court decides to invoke the rule, it also has the discretion to decide whether to stay, transfer, or dismiss the case before it.

---

[6] Plaintiff argues that Defendants' motion is procedurally improper because they already filed answers to the Complaint and Rule 12(b) states that "A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed." But he points to no authority indicating that a motion raising the first-filed rule cannot be filed after an answer. Moreover, as explained in the text, the first-filed rule is an equitable doctrine and does not fit into any of the categories of Rule 12 motions. Rather, it constitutes (or resembles) a "legal defense to a claim" which may be raised in an answer, a Rule 12(c) motion or at trial. Fed. R. Civ. P. 12(h)(2). Headstart first raised the issue in its answer. (ECF No. 15 at 20.)

*Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 210 (3d Cir. 2016) (en banc) (footnote omitted). *See also Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929-30 (3d Cir.1941) ("In all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it.")

Courts will "usually" apply the rule as the "norm, not the exception." *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 979 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990). Courts are "not required to apply the rule rigidly; rather, [courts have] the discretion to consider the specific circumstances of the case." *Sinclair Cattle Co. v. Ward*, 80 F. Supp. 3d 553, 558 (M.D. Pa. 2015) (citing *Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 455 (E.D. Pa. 2013)). Exceptions to the rule include "rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping. District courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule." *E.E.O.C.,* 850 F.2d at 972.[7]

As stated by the Court of Appeals, "the later-filed case must be truly duplicative of the suit before the court. That is, the one must be materially on all fours with the other. The issues must have such an identity that a determination in one action leaves little or nothing to be determined in the other." *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 333 n.6 (3d Cir. 2007) (internal quotations, citations and alterations omitted). *See also Remington Rand Corp.-Delaware v. Bus. Sys. Inc.*, 830 F.2d 1274, 1276 (3d Cir. 1987) (case involved "precisely the same parties as the ongoing plenary action presently before the district court.") At the same time, the Third Circuit has also referred to the first-filed rule as relating to the prosecution of "similar cases." *E.E.O.C.*, 850 F.2d at 971.

---

[7] Plaintiff does not contend that any of the exceptions counsel against applying the first-filed rule here.

District courts are divided on the question of the necessary degree of similarity of the parties, with some requiring identity of the parties, *see Landau v. Viridian Energy PA LLC*, 274 F. Supp. 3d 329, 333 (E.D. Pa. 2017); *Maertin v. Armstrong World Industries, Inc.*, 241 F. Supp. 2d 434, 454 (D.N.J. 2002), and others stating that parties only need to be "substantially similar," *see Panitch v. Quaker Oats Co.*, 2017 WL 1333285, at *2 (E.D. Pa. Apr. 5, 2017); *Ivy Dry, Inc. v. Zanfel Lab., Inc.*, 2009 WL 1851028, at *5-6 (D.N.J. June 24, 2009).

When multiple cases involve collective or class actions, the identity of the class representatives is not the issue. "In determining whether two putative class actions are substantially similar, the relevant inquiry is whether plaintiffs in the later action would be considered members of the class in the first action." *Havassy v. Keller Williams Realty, Inc.*, 2022 WL 4586126, at *3 (E.D. Pa. Sept. 29, 2022) (citations omitted). *See also Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 790 (6th Cir. 2016) ("for purposes of identity of the parties when applying the first-to-file rule, courts have looked at whether there is substantial overlap with the putative class even though the class has not yet been certified."); *MacLean v. Wipro Ltd.*, 2020 WL 7090746, at *6 (D.N.J. Dec. 4, 2020) ("courts that have applied the first-filed rule in the class context have emphasized their desire to avoid duplicative, competing class actions, which could produce inconsistent judgments and burden the judiciary."); *Catanese v. Unilever*, 774 F. Supp. 2d 684, 688 (D.N.J. 2011) (noting that, "[i]n a class action, the classes, and not the class representatives, are compared."); *Abushalieh v. American Eagle Exp.*, 716 F. Supp. 2d 361, 366 (D.N.J. 2010) ("Where each set of named plaintiffs intends to represent the other set, the underlying principles of the first-filed rule which seek to avoid 'vexation of subsequent litigation over the same subject matter' and 'the economic waste involved in duplicating litigation,' and to promote 'prompt and efficient administration of justice,' permit this Court to defer to the court of first jurisdiction.")

As courts have held, "the most important consideration in a first-filed rule analysis is overlapping subject matter." *Catanese*, 774 F. Supp. 2d at 687 (citations omitted). *See also Grant v. LM General Ins. Co.*, 2023 WL 5105158, at *3 (W.D. Pa. Aug. 9, 2023) ("plaintiffs were denied underinsured motorist benefits for the same reason, both raise identical legal theories about the applicability of the regular use exclusion, both sued the same defendant, and both raise claims on behalf of similar putative classes. Therefore, the substantial overlap in the subject matter between the two lawsuits favors invoking the first-filed rule."); *Osborne v. Employee Benefits Admin. Bd. of Kraft Heinz*, 2020 WL 1808270, at *4 (W.D. Pa. Apr. 9, 2020) ("substantial overlap in subject matter between two (2) separate actions is significant in terms of determining whether or not an action should be transferred under the first-filed rule.")

Defendants contend that the first-filed rule applies because of the substantial similarity of this case and the *Friel* action. They have created a chart that compares the factual allegations of the Complaint to the nearly identical allegations in the *Friel* Complaint. (ECF No. 25 at 7-11.) Indeed, it is unsurprising that this case resembles *Friel*, as both actions were commenced by the same counsel, a factor that can be taken into consideration. *See MacLean*, 2020 WL 7090746, at *6 ("since the same counsel represents the Phillips Plaintiffs and the Plaintiffs here, the class allegations, claims and remedies are not just cut from the same cloth, but they are indistinguishable.") *See also Mazzei v. Heartland Payment Sys., LLC*, 2023 WL 6121318, at *5 (D.N.J. Sept. 19, 2023) (same).

Plaintiff contends that the classes are not identical in both cases. He notes that, in *Friel*, the Defendants' campaign ended with a single tranche of robocalls, but here, after Plaintiff replied "STOP" to a Line 5 text message, Line 5 kept calling him, including with prerecorded robocalls. Therefore, he presents an additional putative class not asserted in *Friel* for violations of the

TCPA's internal Do Not Call Registry requirements. According to Plaintiff, he asserts direct liability claims against Line 5, while the plaintiff in *Friel* is proceeding only on a theory of vicarious liability against Line 5.

Plaintiff contends that the differences in TCPA liability theories and factual posture preclude consolidation. In support, he references cases in which the United States Judicial Panel on Multidistrict Litigation has refused to consolidate TCPA cases where the methods of contact or legal theories vary. *See In re: Holiday Cruise Line Tel. Consumer Prot. Act (TCPA) Litig.*, 118 F. Supp. 3d 1377, 1378 (J.P.M.L. 2015) ("Two actions allege Holiday sent text messages, while two actions allege Holiday made telephone calls using an autodialer. Additionally, one action alleges violations of the "Do–Not–Call" registry."); *In re Lifewatch, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 140 F. Supp. 3d 1342, 1343 (J.P.M.L. 2015); *In re: Caribbean Cruise Line, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 89 F. Supp. 3d 1356, 1357 (J.P.M.L. 2015).

In these cases, the JPML stated that "[w]here only a minimal number of actions are involved, the proponent of centralization bears a heavier burden to demonstrate that centralization is appropriate." *Caribbean Cruise Line*, 89 F. Supp. 3d at 1357. It was not dealing with the issue of transfer based on the first-filed rule, but whether the actions should be transferred for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407. Thus, the cases cited by Plaintiff are not on point.

Moreover, courts applying the first-filed rule have rejected the argument Plaintiff presents. *See Panitch*, 2017 WL 1333285, at *4 ("The classes need not be perfectly identical, but rather, 'substantial similarity is sufficient to trigger the first-filed rule.'") (quoting *Palagano v. NVIDIA Corp.*, 2015 WL 5025469, at *4 (E.D. Pa. Aug. 25, 2015)); *Grodko v. Teva Pharm. Indus. Ltd.*, 2018 WL 10847659, at *4 (E.D. Pa. Apr. 10, 2018) (applying the first-filed rule when the first

action's putative class encompasses the second action's putative class). Plaintiff has not cited a single case in which a court has refused to apply the first-filed rule based on alleged minor differences in class definitions.

### 2. Appropriate Remedy

"Once it is determined that the first-filed rule applies, and no exceptions counsel against its application, the court must determine an appropriate remedy. First, the case may be dismissed without prejudice or stayed for the duration of the first-filed matter." *Koresko v. Nationwide Life Ins. Co.*, 403 F. Supp. 2d 394, 403 (E.D. Pa. 2005) (citation omitted). "Alternately, the second-filed case can be transferred to the forum where the first-filed case was brought, consistent with the requirements of 28 U.S.C. § 1404(a)." *Id.* In *Chavez*, the Court of Appeals held that "in the vast majority of cases, a court exercising its discretion under the first-filed rule should stay or transfer a second-filed suit. Even a dismissal *without prejudice* may create unanticipated problems. A dismissal *with prejudice* will almost always be an abuse of discretion." 836 F.3d at 220-21.

A number of courts have applied the first-filed rule in TCPA class actions like this one to transfer the second-filed cases. *See Havassy*, 2022 WL 4586126, at *4 (transferring later-filed TCPA class action to the Western District of Texas because the cases had "overlapping issues and share substantially similar factual allegations."); *O.P. Schuman & Sons, Inc. v. DJM Advisory Grp., LLC*, 2017 WL 634069, at *4 (E.D. Pa. Feb. 16, 2017) ("The Court chooses to transfer rather than stay this case, as resolution of both cases within the same district, and potentially by the same judge, is in the interest of the parties, witnesses, and judiciary."); *Thompson v. Glob. Mktg. Rsch. Servs., Inc.*, 2016 WL 233702, at *3 (E.D. Pa. Jan. 20, 2016) ("Despite the fact that the class definitions in Thompson's case and the *Martin* litigation differ, the subject matter of the two cases is substantially the same. Thus, the first-to-file rule applies and weighs in favor of transfer.")

Similarly, "[c]ourts in this Circuit have frequently held that the pendency of a related or similar case in another forum is a powerful reason to grant a motion for a change of venue." *American Inst. for Hist. Educ., LLC v. E-Learning Sys. Int'l LLC*, 2010 WL 4746233, at *3 (D.N.J. Nov. 16, 2010) (citations omitted).

For these reasons, the Court concludes that the appropriate remedy is to transfer this action to Middle District of Pennsylvania for all further proceedings.

**III.   Conclusion**

For these reasons, it is recommended that the motion to dismiss of Defendant Headstart Warranty Group, LLC (ECF No. 24), as joined by Defendant Line 5, LLC (ECF No. 27), be granted in that this action be transferred to the United States District Court for the Middle District of Pennsylvania.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by October 3, 2025. Any party opposing the objections shall file a response by October 17, 2025. Failure to file timely objections will waive the right of appeal.

Dated: September 19, 2025

/s/Patricia L. Dodge
PATRICIA L. DODGE
UNITED STATES MAGISTRATE JUDGE